UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

HOLLY MCKNIGHT,

                              Plaintiff,

              v.                                                    12-CV-1257(LJV)(MJR)

TOWN OF HAMBURG,

                              Defendant.

_____

## MEMORANDUM AND ORDER

The plaintiff is a retired police officer who claims that her former employer

discriminated against her on the basis of her sex and disability.  The defendant moved

for summary judgment (Docket Item 28), after which the Court referred this matter to

United States Magistrate Judge Michael J. Roemer.  Docket Item 40.[1]  Judge Roemer

then issued a Report and Recommendation ("R&R"), dated April 25, 2016,

recommending that the defendant's motion be granted.  *See* Docket Item 45.  Pending

before this Court are the plaintiff's objections to Judge Roemer's R&R.  *See* Docket

Item 48.

This Court "must determine de novo any part of the magistrate judge's

disposition that has been properly objected to" and "may accept, reject, or modify the

recommended disposition; receive further evidence; or return the matter to the

magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1).

---

[1] At the time, this matter was assigned to United States District Judge Richard J. Arcara.
On March 8, 2016, this matter was reassigned from Judge Arcara to the undersigned.
Docket Item 41.

Upon de novo review, this Court agrees with Judge Roemer's conclusions that "there is simply no evidence that McKnight's gender played any role in the adverse actions she complains of," Docket Item 45 at 21, and that she "could not perform the essential functions of her job, with or without a reasonable accommodation." *Id.* at 23. Therefore, for substantially the same reasons set forth in the R&R, the defendant's motion for summary judgment (Docket Item 28) is GRANTED.

Certain arguments made in the plaintiff's objections (or at oral argument of those objections) are, however, worth briefly addressing.

## **The Plaintiff's Evidence**

In her objections, the plaintiff argues that she submitted evidence sufficient to defeat summary judgment, that Judge Roemer failed "to construe the evidence in the light most favorable to [her]," and that he "sycophantically accepted defendant's version of events as true." Docket Item 48 at 1.

In discrimination cases like this one, it is appropriate to employ the burden-shifting analysis that the Supreme Court set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

> Under *McDonnell Douglas,* a plaintiff must first establish a prima facie case of discrimination.  The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. If the employer meets this burden, the presumption of intentional discrimination disappears, but the plaintiff can still prove disparate treatment by, for instance, offering evidence demonstrating that the employer's explanation is pretextual.

*Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3 (2003) (internal citation omitted).

The R&R found that the plaintiff failed to establish a prima facie case of sex discrimination.  *See* Docket item 45 at 20.  But even assuming that the plaintiff had

2

satisfied that burden, the defendant also satisfied its burden of articulating non-discriminatory reasons for its actions. Therefore, the defendant was entitled to summary judgment "unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir. 2005) (internal quotation marks omitted). In this regard, the plaintiff had "no obligation to prove that the employer's innocent explanation [was] dishonest." *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 156 (2d Cir. 2010). Instead, she need have shown only "that the defendant was in fact motivated at least in part by the prohibited discriminatory animus." *Id.*

The plaintiff pointed to certain comments and conduct by the chief of police when he was a patrol officer in 1991 as being evidence that reasonably supports a finding of prohibited discrimination. *See, e.g.*, Docket Item 36-2 at ¶¶ 10-12.[2] Judge Roemer found that "not probative of discrimination because [it] occurred nearly twenty years before McKnight went on leave, and [it had] nothing to do with the adverse employment actions she alleges." Docket Item 45 at 16. The plaintiff objected to that conclusion, characterizing it as relying on a "per se rule that remarks of more than one year in age are, as a matter of law, not probative." Docket Item 48 at 11. But the plaintiff's objection misses the mark.

First, the plaintiff is correct that "there is no bright-line rule for when remarks become 'too attenuated' to be significant to a determination of discriminatory intent." *Id.*

---

[2] The plaintiff also described a comment the chief allegedly made at a meeting in 2012, which Judge Roemer properly discounted because the plaintiff did not attend the meeting "and the basis for her knowledge of the remark [was] not stated." Docket Item 45 at 16.

(quoting *Tolbert v. Smith*, 790 F.3d 427, 437 (2d Cir. 2015). But Judge Roemer did not rely on such a bright-line rule. Moreover, and more importantly, this Court finds on de novo review that the chief's comments and conduct still are far too attenuated to defeat summary judgment. And that is based on the decades-long gap between the specific remarks or conduct alleged and the adverse employment actions, as well as the lack of any connection between the remarks or conduct and the circumstances surrounding the adverse employment actions.

The plaintiff also alleged that similarly situated male police officers were treated more favorably, and she argued that this supported a finding of prohibited discrimination. That, too, was insufficient because the plaintiff failed to submit evidence that those police officers were "similarly situated in all material respects." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). Indeed, the plaintiff relied almost entirely on her own statements, based on "common knowledge" (as her counsel described it at oral argument) that comparable male officers were treated differently. As the Second Circuit observed in *Shumway*, such evidence boils down to "conclusory statements of no probative value." *Id.*

At oral argument of the plaintiff's objections, this Court questioned counsel in detail about what evidence reasonably supported a finding of prohibited discrimination with respect to each of the four alleged adverse actions. In addition to the evidence discussed above, the plaintiff's counsel also referred to certain deposition testimony upon which the plaintiff had previously relied in opposing summary judgment (even though that testimony was not specifically referenced in her objections). But a review of that evidence reveals that it contradicts, rather than supports, the plaintiff's claims.

The plaintiff claimed that males were treated differently in connection with a policy that requires officers on sick leave to stay at home during normal work hours.  In support, the plaintiff cited the deposition testimony of Officer Joseph O'Brien, her union representative, in which he describes how the policy was applied to Officer Thomas Best.  The plaintiff argued that Best was "allowed to leave his home in violation of the policy without being disciplined."  Docket Item 36-2 at ¶ 35.  According to the testimony the plaintiff cited, however, after Best left home "to go to the store and get medicine for his kid," the chief told Best that he still needed to ask permission, the discussion became heated, and then "both sides took a step back."  Docket Item 29-3 at 86.  By contrast, the plaintiff undisputedly violated the policy by going to a mall to pick up some clothing.  So even assuming that Best was treated differently (which is not clear from O'Brien's testimony), there is no basis to conclude that Best was similarly situated to the plaintiff—even remotely—in all material respects.

Similarly, with respect to the plaintiff's allegation that she was forced to submit an application for New York General Municipal Law § 207(c) benefits when male officers were not, *see, e.g.*, Docket Item 36 at 12, the plaintiff's counsel again referred to O'Brien, the union representative.  According to the plaintiff, O'Brien told her that "he had no idea what a 207(c) application even was," Docket Item 36 at 12, which the plaintiff presumably offered to support the inference that male officers routinely received the benefits without needing to apply.  But according to O'Brien's sworn testimony in the record, he did not recall any male officers receiving the benefits without the application. *See* Docket Item 29-3 at 80.  He also recalled one or more male officers who did submit

the application (or, at least, had been "given hell" with respect to the benefits). *Id.* at 79-80.  So again, there is nothing in the record that supports the plaintiff's claim.

Viewing the evidence as a whole, the plaintiff simply has not adduced evidence that reasonably supports a finding of prohibited discrimination.  On the contrary, evidence upon which the plaintiff relied suggests just the opposite.

### The Plaintiff's Objection to Applying the *McDonnell Douglas* Framework

In her objections, the plaintiff also objects to employing the *McDonnell Douglas* framework.  According to the plaintiff, "[t]he R&R erroneously [held] that the *McDonnell Douglas* burden shifting paradigm is still applicable to title VII cases based on sex," which "has long been untrue."  Docket Item 48 at 6.  In support of this claim, the plaintiff relies on *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989), and *Desert Palace v. Costa, Inc.*, 539 U.S. 90, 94-95 (2003), arguing that *McDonnell Douglas* applies "only in cases requiring but-for causation," such as those involving age discrimination.  Docket Item 48 at 7.

The plaintiff's argument is itself out of date, since there was no such sea change in the law regarding Title VII cases after *Desert Palace*.[3]  In fact, federal courts have

---

[3] Arguments similar to the plaintiff's initially found some traction following *Desert Palace*, but they soon were rejected.  *See generally Carey v. Fedex Ground Package Sys., Inc.*, 321 F. Supp. 2d 902, 915 (S.D. Ohio 2004) ("The Court does not agree with those courts and commentators that have found that, after *Desert Palace*, the *McDonnell Douglas* framework has ceased to exist entirely."); *Herawi v. State of Alabama Dep't of Forensic Scis.*, 311 F. Supp. 2d 1335, 1346 (M.D. Ala. 2004) ("There is nothing in *Desert Palace* to undermine the usefulness of *McDonnell Douglas*."); *Dunbar v. Pepsi–Cola Gen. Bottlers,* 285 F.Supp.2d 1180, 1197-98 (N.D.Iowa 2003) (concluding that "*McDonnell Douglas* burden-shifting paradigm must only be modified in light of *Desert Palace*" to permit plaintiff to prove, at step three, either (1) "that the defendant's reason is not true" *or* (2) that prohibited discrimination is a "motivating factor").

subsequently applied *McDonnell Douglas* to thousands of Title VII sex discrimination claims based on circumstantial evidence.[4]   Even a cursory search of Second Circuit case law reveals a number of such decisions in 2016 alone.   *See, e.g.*, *Camarda v. Selover*, 2016 WL 7234686, at *3 (2d Cir. Dec. 14, 2016) (Summary Order) ("In sum, because [plaintiff] failed to adduce sufficient evidence to make out a *prima facie* case of employment discrimination under . . . the *McDonnell-Douglas* framework . . . , defendants were entitled to summary judgment on her claims of sex discrimination."); *Dotel v. Walmart Stores, Inc.*, 627 F. App'x 42, 43 (2d Cir. 2016) (Summary Order) (same).

   What is more, the "shifting burdens of proof set forth in *McDonnell Douglas*" are merely a procedural device "designed to assure that the plaintiff has [her] day in court despite the unavailability of direct evidence."  *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) (internal quotation marks and alteration omitted).   The *McDonnell Douglas* analysis allows a plaintiff alleging discrimination first to make a "minimal" showing, which "creates a presumption that the employer unlawfully discriminated against the employee" and "places upon the defendant the burden of producing an explanation to rebut the prima facie case."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993) (internal quotation marks omitted).   Once "the employer's nondiscriminatory explanation has been given, the *McDonnell Douglas* presumptions disappear from the case, and the governing standard is simply whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred."  *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 156 (2d Cir.

---

[4] Despite the plaintiff's assertion to the contrary, there is no "direct" evidence of discrimination here.

2000).  Thus, there is nothing in the *McDonnell Douglas* framework that prejudices the plaintiff or holds her to an inappropriate standard when opposing summary judgment.

The plaintiff's confusion perhaps is a result of the R&R's use of the term "pretext" to describe step three of the *McDonnell Douglas* framework.  The Second Circuit has recognized "that courts often speak of the obligation on the plaintiff to prove that the employer's explanation is a 'pretext for discrimination.'"  *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 156 (2d Cir. 2010).  But in this case, as in many others, that term simply was "shorthand for the more complex concept that, regardless of whether the employer's explanation also furnished part of the reason for the adverse action, the adverse action was motivated in part by discrimination."  *Id.*  Here, Judge Roemer correctly found that "there is simply no evidence that McKnight's gender played *any* role in the adverse actions she complains of."  Docket Item 45 at 21 (emphasis added).  Therefore, the plaintiff failed to produce evidence showing that the defendant was motivated, in whole or in part, by prohibited discriminatory animus.

## CONCLUSION

For the reasons set forth above and in the R&R, the defendant's motion for summary judgment (Docket Item 28) is GRANTED.  The Clerk of Court shall take all steps necessary to close the case.

IT IS SO ORDERED.

Dated:    March 13, 2017
          Buffalo, New York

                              *s/Lawrence J. Vilardo*
                              LAWRENCE J. VILARDO
                              UNITED STATES DISTRICT JUDGE

8